IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD WAGNER**, *et al.*, | : | |
| | : | Case No. 2:14-cv-00994 |
| **Plaintiffs**, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| **WHITE CASTLE SYSTEM, INC.**, | : | Magistrate Judge Deavers |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

### I.  INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Class Certification, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  (Doc. 27).  Defendant opposes, on the grounds that Plaintiffs do not have standing to bring an action on behalf of a class and that Plaintiffs proposed class does not meet the prerequisites required by Rule 23.  (Doc. 28).  For the following reasons, Plaintiffs' Motion for Class Certification is **DENIED**.

### II.  BACKGROUND

Plaintiffs Richard Wagner and Derek Mortland[1] bring this action, individually and on behalf of all other mobility-impaired individuals similarly situated, against Defendant White Castle Sytem, Inc. ("White Castle" or "Defendant"), alleging that 54 Ohio White Castle restaurant sites are places of public accommodation that subject customers to violations of Title III of the Americans with Disabilities Act ("ADA").  (*Second Am. Compl.*, Doc. 22).  Plaintiffs seek to represent a class of "individuals with mobility impairment," – specifically, patrons who

---

[1] This action was originally brought by Plaintiff Wagner; Plaintiff Mortland was added to the action as a named plaintiff in the Second Amended Complaint.  (*See Order*, Doc. 20 at 1).

1

use wheelchairs or scooters – "who desire to use Defendant's White Castle locations in Ohio." (*Id*. at ¶ 2; *see also* Doc. 27 at 4).

Both named Plaintiffs are Columbus, Ohio residents with disabilities: Mr. Wagner sustained a spinal cord injury resulting in him becoming paraplegic; Mr. Mortland also is paralyzed from a spinal injury. (Doc. 22 at ¶¶ 4-5). Both named Plaintiffs require the use of a wheelchair to ambulate. (*Id*.). Plaintiffs assert that Mr. Wagner and Mr. Mortland each are "active members of their communities," are "dedicated to advocating for the rights of persons with disabilities," and have been active in Ohio organizations that assist persons with disabilities, such as Access Ohio. (Doc. 27 at 5).

According to the Second Amended Complaint, Plaintiffs allege that both Mr. Wagner and Mr. Mortland have visited White Castle restaurants in Ohio, "frequently visit" White Castles in their travels around various areas of Ohio, and plan to return. Plaintiffs allege that they have "encountered architectural barriers at the White Castles they have visited" that "made it more difficult for them to enter the premises, to eat inside the premises, and to use the counters, and have denied them the full and equal access to Defendant's restaurants." (*Id*. at ¶ 6). Plaintiffs assert that Defendant "has discriminated, and is continuing to discriminate, against the Plaintiffs and the class of persons similarly situated, in violation of the ADA by failing to have accessible facilities." (*Id*. at ¶ 12).

Plaintiffs' Second Amended Complaint lists five White Castle restaurants located in Columbus Ohio, setting out a number of specific alleged ADA violations encountered by Mr. Wagner and Mr. Mortland at each. (*Id*. at ¶ 12). Plaintiffs also set out the addresses of 48 other White Castle restaurants, (*id*. at ¶ 10), asserting that Mr. Wagner and Mr. Mortland also have visited White Castle restaurants other than the five specifically listed and have "experienced and

2

observed similar barriers to access." (*Id*.). Plaintiffs allege that Defendant has discriminated against them and the class of persons similarly situated by failing to provide accessible restrooms, accessible counters, doors with required maneuvering clearances, toilets with ADA compliant flush control, ADA compliant accessible seating, grab bars in restrooms, and ADA compliant handrails, among other alleged violations. Plaintiffs further assert that the violations described in paragraph 12 of the Second Amended Complaint are not an exclusive list of Defendant's ADA violations. (*Id*. at ¶ 13).

Plaintiffs ask this Court to enter a permanent injunction, enjoining Defendant from continuing its discriminatory practices, ordering Defendant to alter the specifically identified White Castle locations in Ohio, until the requisite modification are complete, awarding attorneys' and expert fees and litigation expenses and costs incurred, and granting Plaintiffs such further relief as this Court deems just and proper. (*Id*. at 16, ¶ 22).

On January 6, 2015, Plaintiffs moved for class certification requesting certification of the following class:

> All individuals with disabilities who use wheelchairs or electric scooters for mobility who, during a specified time period to be determined by this Court, were denied, or are currently being denied, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of White Castle corporate restaurants in Ohio.

(Doc. 27 at 3). Plaintiffs also move this Court to appoint the named Plaintiffs, Mr. Wagner and Mr. Mortland, as class representatives, and appoint the law offices of Fuller, Fuller, & Associates, P.A. and Owen B. Dunn Jr., as class counsel.[2] (*Id*.).

Defendant opposes, first asserting that Plaintiffs lack standing on behalf of the entire proposed class seeking injunctive relief. (Doc. 28 at 1). Defendant also argues that

---

[2] Notably, Plaintiffs ask to "reserve the right" to alter or expand their claims following discovery based on Defendant's policies, governing design, structure, and maintenance of facilities.

Plaintiffs' motion is "unsupported by evidence and fails to satisfy the requirements of Rule 23(a) and Rule 23(b)(2)." (*Id.*).

This matter is fully briefed and ripe for the Court's review.[3]

### III. ANALYSIS

Plaintiffs seek class certification under Rule 23, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). Plaintiffs seek to certify a class defined as:

> All individuals with disabilities who use wheelchairs or electric scooters for mobility who, during a specified time period to be determined by this Court, were denied, or are currently being denied, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of White Castle corporate restaurants in Ohio.

(Doc. 27 at 3). Defendant opposes, arguing that this Court should deny Plaintiffs' Motion for Class Certification because it is unsupported by evidence, fails to satisfy the requirements of Rule 23(a) and Rule 23(b)(2), and because Plaintiffs lack standing to bring this action on behalf of the putative class.

#### A. Class Certification under Rule 23

##### *1. Standard*

To receive class certification, a proposed class must satisfy all four of the Rule 23(a) prerequisites – commonly known as numerosity, commonality, typicality, and adequacy of representation – and fall within one of the three types of class actions listed in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 537 (6th Cir. 2012). Federal Rule of Civil Procedure 23(a) specifically states:

---

[3] The Court notes that, although Plaintiffs' Motion for Class Certification claims that they have conducted "limited discovery," Plaintiffs clarified at oral argument that there has been no discovery in this case. (*See* Doc. 27 at 7, 10). Plaintiffs' intended their reference to "limited discovery" as referring to a preliminary investigation, which Plaintiffs independently conducted, for which Plaintiffs sent an "expert" to several Ohio White Castle restaurants to examine the facilities. At oral argument, Defendant indicated that it communicated an offer to Plaintiffs to conduct limited discovery solely related to issues of class certification, but that the offer was declined.

4

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).  The party requesting class certification bears the burden to prove the Rule 23 certification requirements.  *Young,* 693 F.3d at 537.  While district courts have broad discretion in deciding whether to certify a class, that determination must be made within the framework of Rule 23 and only after conducting a "rigorous analysis."  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

To warrant class certification, the Sixth Circuit has made clear that mere repetition of the language of Rule 23(a) is insufficient.  The Circuit has specifically provided:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." [*Wal–Mart Stores Inc. v. Dukes*, ––– U.S. ––––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2012)]. "[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable," *Gen, Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740[ ] (1982), and must be checked through "rigorous analysis," *Wal–Mart*, 131 S.Ct. at 2551 (quoting *Falcon,* 457 U.S. at 161, 102 S.Ct. 2364, 72 L.Ed.2d 740). Some circuits expressly bar district courts from presuming that the plaintiffs' allegations in the complaint are "true for purposes of the class motion ... without resolving factual and legal issues that strongly influence the wisdom of class treatment." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. [2001]), *cert. denied,* 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263. 534 U.S. 951, 122 S.Ct. 348, 151 L.Ed.2d 263 (2001) (internal quotation marks omitted); *see also Elizabeth M. v. Montenez*, 458 F.3d 779, 783 (8th Cir. 2006); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)*, 471 F.3d 24, 41 (2d Cir. 2006). That approach follows from *Falcon*, and *Wal–Mart* has cemented its propriety.

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012).  In addition, the Sixth Circuit has determined that plaintiffs must show that the proposed class is defined precisely and ascertainable.  *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08–cv–186, 2010 WL 3397501

5

(S.D. Ohio Aug. 25, 2010) (citing *Stewart v. Cheek & Zeehandelar, LLP,* 252 F.R.D. 387, 391 (S.D. Ohio 2008)).

In addition to meeting the prerequisites of Rule 23(a), a party seeking class certification also must show that the class action is maintainable under one of the three provisions of Rule 23(b). *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). Classes under Rule 23(b)(2) generally are confined to declaratory and injunctive relief actions. *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 651 (6th Cir. 2006).

### 2. Commonality under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" before certification can be granted. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S.Ct. at 2551 (internal quotation marks omitted). In *Dukes*, the Supreme Court held that named plaintiffs must show that their claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* It "is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" that is determinative. *Id* (emphasis in original). "In other words," the Sixth Circuit has noted, "named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, No. 14-4088, 2015 WL 4978712, at *3-4 (6th Cir. Aug. 20, 2015).

Plaintiffs argue that common factual and legal issues exist as to the named Plaintiffs and all putative class members, including "whether they have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of Defendant's facilities due to Defendant's failure to operate its facilities in compliance with the [ADA]," and the state of and legal adequacy of a number of architectural elements at Defendant's restaurants, such as the parking lots, entrances, dining areas, condiment and drink dispensers, and restrooms.

Defendant vigorously disputes that Plaintiffs satisfy the element of commonality, for several reasons. First, Defendants claim that while Plaintiffs allege there are common ADA violations at the 54 White Castle restaurants listed in the Second Amended Complaint, Plaintiffs' own expert identified different types of violations at the five Columbus White Castles he visited. Defendants also argue that Plaintiffs' claims of commonality should fail because Plaintiffs have not provided any evidence of a common design or blueprint for the 54 White Castle restaurants in Ohio that would support a claim that they all have the same ADA violations. And, Defendants insist, such an inference is rebutted by the affidavit of Glen Davidson, White Castle's Director of Engineering, who avers that while there is "some level of similarity in the design" of White Castle restaurants, "there is also a significant amount of variety based on differing points in time in which the restaurants were initially constructed and/or modified and differing physical constraints caused by specific locations of the restaurants." (Davidson Aff., Doc. 28-1). Mr. Davidson also states that:

> The White Castle restaurant locations around Ohio differ in size, dining area, layout, restroom layout, access routes, parking lot size and layout, and building modification dates. As a result, whether there are any barriers to access by disabled persons at the White Castle locations around the State of Ohio would vary significantly from restaurant location to location.

(*Id*.). In addition, Defendant argues that the factual issues – whether each White Castle location violates the ADA for wheelchair and scooter users and what alterations, if any, may be required for those locations to comply with the ADA – are too generalized and broad to satisfy Rule 23(a)(2). Further, Defendant maintains that the answers to critical legal questions will vary depending on the precise alleged violations, which will require separate factual determinations for each of the 54 facilities.

For the reasons that follow, the Court agrees that Plaintiffs have not met their burden under Rule 23(a)(2). At present, in light of Plaintiffs' allegations and evidence before the Court, the Court is persuaded by the approach that the Western District of Pennsylvania took under similar circumstances in *Mielo v. Bob Evans Farms*, *Inc.*, No. 14-1036, 2015 WL 1299815 (W.D. Penn. Mar. 23, 2015).

In *Mielo*, the plaintiff alleged that various properties owned and managed by Bob Evans, located across Ohio, West Virginia, and Pennsylvania, were not fully accessible to, and independently usable by, individuals who use wheelchairs for mobility because of excessive slopes in purportedly accessible parking spaces and access aisles to building entrances. 2015 WL 1299815 at *1. The plaintiff sought to certify a class of all persons with qualified mobility disabilities who were denied the full and equal access of Bob Evans restaurant locations nationwide on the basis of disability because of sloped parking spaces and/or sloped access aisles. *Id*. at *2.

The the court found that there was "no common answer to the question posed by Plaintiff," as required under *Dukes*, because "[defendant] Bob Evans' parking lots do not share a common design, and Mielo concedes that at least some Bob Evans parking lots comply with the ADA's sloping requirements." *Id*. at *6. Further, the court pointed out that because "the

8

standard for ADA compliance differs with respect to accessibility of new construction and existing facilities . . . [t]he differences in applicable law would require the court to answer a variety of restaurant-specific questions." Specifically, the court noted that before any common legal issues can be reached, each restaurant's parking lot would need to be "individually examined," and "its date of construction or alteration determined." *Id*. Thereafter, the court found, a determination would need to be made "as to whether that parking lot meets the ADA standards applicable to the structure depending on the date of construction." *Id*.

The court found it significant that the plaintiff "failed to make the case that [defendant] has any common offending policies or design characteristics that called for common accessibility barriers at its restaurants." The court concluded, therefore, that:

> [p]roving the existence and cause of accessibility barriers at each of the Bob Evans restaurants would be too fact-intensive and individualized to be effectively addressed in a single class action. The threshold question—whether any store in particular is out of compliance and if so, in what manner (running slope, cross slope, degree of deviation)—would have to be answered on a store-by-store basis, and the class members at the various 563 nationwide stores would not share common legal issues or salient core facts. Rather, the Court would have to conduct a mini-trial for each restaurant in order to determine if injunctive relief was appropriate. For these reasons, the Court cannot find based on a preponderance of the evidence that Plaintiff has met the commonality requirement.

*Mielo*, 2015 WL 1299815 at *7; *see also Castaneda v. Burger King Corp.,* 264 F.R.D. 557, 567 (N.D.Ca. 2009) (finding that "commonality" was not met where plaintiffs sought to certify a class against 92 Burger King franchisees, owned and operated by Burger King Corporation, for alleged architectural barriers for wheelchair and scooter users, holding "Plaintiffs have failed to meet their burden under Rule 23(a)(2) because they have not shown either a common core of salient facts—that Burger King Corporation created common barriers to access across multiple restaurant locations—or a

shared legal issue—whether there were violations of the ADA or California statutes at each location. As already noted, any shared legal issues, such as Burger King's legal responsibility for violations as a franchisor/lessor, are predicated on an initial determination of the entirely individual issues of whether there is liability at each store in the first place. The lack of commonality with regards to access barriers across multiple facilities weighs heavily against class certification especially where, as here, there is no affirmative centralized plan calling for the alleged barriers at different stores.").

Similarly, in the case *sub judice*, Plaintiffs have not demonstrated that there is a common answer to the question it poses – whether the putative class members "have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of Defendant's facilities due to Defendant's failure to operate its facilities in compliance with the [ADA]."  Plaintiffs present no evidence of a common design or blueprint as to any specific feature of Ohio's 54 White Castle restaurants, or a common policy applicable to the stores.  Moreover, Plaintiffs provide no counter to the affidavit offered by White Castle's Director of Engineering who avers that the restaurants vary "significant[ly]."  (Doc. 28-1).  It is also notable that even Plaintiffs' own "expert" identifies varied alleged ADA violations among the handful of restaurants he visited.

Additionally, the legal standards for ADA compliance differ with respect to accessibility of new construction and existing facilities. Congress required reasonable architectural standards for new construction and allowed for less costly measures for older facilities.  *See* 28 C .F.R. § 35.151; 28 C.F.R. § 35.150(b)(1). For example, places of public accommodation and commercial facilities newly constructed for first occupancy

10

after January 26, 1992, must be "readily accessible to and usable by" individuals with disabilities.  28 C.F.R. § 36.401(a) (1).  Facilities altered after January 26, 1992, must also meet this standard.  Existing facilities, however, that predate January 26, 1992, must meet a lesser "barrier removal standard," which requires the barriers to be removed where it is "easily accomplishable and able to be done without undue burden or expense." 28 C.F.R. § 36.304(a).  The ADA additionally requires that all places of public accommodation, including, but not limited to, those that predate the effective date of the ADA remove architectural barriers that are structural in nature, when it is "readily achievable" to do so.  42 U.S.C. § 12182(b)(2)(A)(iv). When applied to existing facilities, the "readily achievable" standard imposes a less rigorous degree of accessibility than for new construction or modifications.  *See* 28 C.F.R. part 36, App. B § 36.304.

Here, Plaintiffs have presented no evidence of the years in which the 54 challenged White Castle restaurants were built and, therefore, which legal standard applies.  Even if they had, however,  "differences in applicable law would require the Court to answer a variety of restaurant-specific questions." *Mielo*, 2015 WL 1299815 at *7.  For example, prior to reaching any common legal issues, each restaurant's entrances, condiments and drink dispensers, restrooms, counters, and dining areas would need to be "individually examined, its date of construction or alteration determined, and then a determination must be made as to whether that parking lot meets the ADA standards applicable to the structure depending on the date of construction."  *Id*. (citing *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407 at *23 (W.D.Pa. April 12, 2013) (commonality not met because the necessary "highly individualized analysis ... would require a number of individual mini-trials"); *Castaneda*, 264 F.R.D. at 568-69 (finding that plaintiffs failed

11

to meet the commonality requirement with respect to ADA claims against 92 restaurants because "each location has unique facilities" and "it would be necessary to have 92 trials within a trial.")).

In summary, a review of Plaintiffs' class claims as currently pled does not demonstrate that the alleged White Castle ADA violations would be effectively addressed in a single class action. The central question as posed by Plaintiffs would have to be answered on a restaurant-by-restaurant basis, and Plaintiffs have not demonstrated that the class members at the various 54 Ohio restaurants would share common legal issues or salient core facts. As currently presented, it appears that the Court would be required to conduct a mini-trial for each restaurant to determine whether injunctive relief was appropriate. For these reasons, the Court cannot find that Plaintiff has met the commonality requirement. *See Mielo v. Bob Evans Farms, Inc*., 2015 WL 1299815 at *5-7; *see also Castaneda*, 264 F.R.D. at 567-69.

On this basis, the Court is unable to certify a Rule 23 class at this time.[4] If Plaintiffs, however, are able – for example, post-discovery – to present evidence demonstrating that a narrower or more specifically defined class of individuals who ambulate using wheelchairs and scooters, or subclasses of such individuals, meet the prerequisites for Rule 23 class certification with respect to White Castle restaurants in Ohio, Plaintiffs may re-file for class certification and the Court will reconsider its decision. *See* Rule 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment"); see also Hughes v. Gulf

---

[4] The Court declines to address Defendant's remaining arguments against class certification, related to standing, as well as the remaining requirements of Rule 23, because it finds that the class as it is currently alleged and proposed fails under Rule 23(a)(2). The Court expresses no opinion as to whether the class, as currently defined and alleged, meets the remaining requirements of Rule 23.

Interstate Field Servs., Inc., No. 2:14-CV-000432, 2015 WL 4112312, at *5 (S.D. Ohio July 7, 2015).[5]

## IV. CONCLUSION

For the following reasons, Plaintiffs' Motion for Class Certification, (Doc. 27), is **DENIED**.

**IT IS SO ORDERED.**

                                         **s/ Algenon L. Marbley**
                                         **ALGENON L. MARBLEY**
                                         **UNITED STATES DISTRICT JUDGE**

**DATED: September 21, 2015**

---

[5] At oral argument, Plaintiffs' counsel represented to this Court that the counter heights, restrooms, and entryways of all 54 White Castle restaurants are inaccessible to individuals in wheelchairs or scooters and thus violate the ADA. The Court notes that neither Plaintiffs' Second Amended Complaint nor their Motion for Class Certification or supporting evidence provide support for Plaintiffs' counsel's claim. If, however, after discovery Plaintiffs' uncover support for such a claim, such evidence may be helpful for Plaintiffs to demonstrate commonality under Rule 23(a)(2).